Gary L. JENSEN
and Janelee H. Jensen
*v.*

DEPARTMENT OF REVENUE
(TC 3716)

Marc K. Sellers, Schwabe, Williamson & Wyatt, represented plaintiff (taxpayer(s)).

Jerry Bronner, Assistant Attorney General, Department of Justice, represented defendant (department).

Decision for defendant rendered June 21, 1995.

**CARL N. BYERS, Judge.**

Taxpayers appeal from adjustments to their 1990 and 1991 Oregon personal income taxes. They claim certain income was exempt from Oregon tax by virtue of Public Law 101-322, the Amtrak Reauthorization and Improvement Act of 1990. After an administrative hearing, the Department of Revenue (department) determined that taxpayers' income

was taxable because they did not qualify under the federal law. Taxpayers then appealed to this court.

## FACTS

During the years in question Gary Jensen (taxpayer) was employed by Consolidated Freightways Corporation (Consolidated), an interstate trucking firm. Consolidated is a "less than truckload" carrier and uses many freight terminals and consolidation centers. A consolidation center may be viewed as a mother terminal which coordinates shipments for maximum efficiency. Consolidated is organized into operating divisions with each division having a number of operating groups. Taxpayer is the manager of the Portland Operating Group. The Portland Operating Group has a consolidation center in Portland and satellite terminals in various parts of Oregon, Washington, and Idaho.

As Group Operations Manager, taxpayer is responsible for the entire group, including freight flow, personnel, vehicles and equipment. Taxpayer's group has 750 to 800 employees, a large number and variety of vehicles, and a high volume of freight. Taxpayer obtained his position after 22 years of experience with Consolidated, beginning at the lowest level.

The court received evidence with regard to taxpayer's specific duties and his job performance. Taxpayers presented this evidence to establish that taxpayer directly affects safety. The evidence demonstrated that Consolidated places a high value on safety in its operations. With accident prevention as a major element in its program, the company conducts frequent safety meetings, inspections and training. Safety is stressed in all aspects of the company's operation and taxpayer's performance as Group Operations Manager is evaluated with regard to specific safety standards and goals.

Taxpayer's management duties include safety considerations and policies. For example, taxpayer has authorized and ordered drug testing for employees, and has personally road tested a truck driver's abilities. In completing self-audit questionnaires, used by Consolidated as a

management tool to improve its operations, he has physically checked vehicles for proper maintenance. He also investigates accidents involving Consolidated vehicles. Taxpayer has extensive authority to implement safety policies and other decisions, including progressive discipline, ordering repairs or taking vehicles out of service.

Taxpayer is an upper level manager, reporting to a division manager. All terminal managers in the Portland Operating Group and all the managers within the Portland consolidation center report to taxpayer.

Notwithstanding the scope of his responsibilities, taxpayer's primary duty is the operation of the Portland consolidation center. The consolidation center operates 24 hours per day, every day of the week. Taxpayer is on call at all times and typically works a 10-14 hour day. He visits the other terminals in the Portland Operating Group on an as-needed basis. He may visit the other terminals to investigate accidents, evaluate the facilities, check on problems, or hold safety or other training meetings. These visits are not frequent and taxpayer spends approximately 90 percent of his time at the Portland center.

## LAW

Taxpayer resides in Vancouver, Washington. Although he spends the majority of his working time in Portland, he contends that the income earned in Oregon is not taxable by Oregon. The basis for this claim is a special provision in federal legislation which reads:

> "No part of the compensation paid by a motor carrier * * * to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence." 49 USC § 11504(b)(1).

Subparagraph (2) of the statute states: "In this subsection 'employee' has the meaning given such term in section 31132 of this title." This adoption of a definition by reference requires the court to also construe section 31132, the relevant portion of which states:

"(2) 'employee' means an operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who—

"(A)  directly affects commercial motor vehicle safety in the course of employment; * * *." 49 USC § 31132(2).

## ISSUE

The issue is whether taxpayer qualifies as an "employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle" under 49 USC § 11504(b)(1).

## ANALYSIS

This appears to be a case of first impression. There are no cases construing the statutes and no legislative history to provide guidance with regard to legislative intent. Hence, the court must rely upon the wording of the statutes and general principles of statutory construction.

In construing these statutes, the court first considers their relative positions and purposes within the larger framework. The subject of Title 49 of United States Code is transportation. Within that title, Subtitle VI pertains to motor carriers. Part B of Subtitle VI concerns commercial motor carriers; and, within that part, chapter 311 contains the laws concerning safety regulation. Section 31132 of 49 USC is found within chapter 311.

Subtitle IV contains general interstate commerce provisions addressing such topics as jurisdiction, rates and tariffs, licensing and operations. Chapter 115 of that subtitle addresses federal-state relations. Consequently, section 11504(b)(1), restricting the state's jurisdiction to tax, is not in the same chapter or even in the same subtitle as the statute defining the term "employee."

The policies underlying two subtitles and chapters are not necessarily related or coordinated. The purpose of Subtitle IV is to clarify the lines of jurisdiction and authority between the states and the federal government. They are intended to avoid disputes between those governmental bodies. Such is the context of section 11504(b)(1) which

relieves certain traveling motor carrier employees from burdensome tax obligations. On the other hand, the purpose of the laws in chapter 311 is to promote safety. In fact, section 31131 sets out the purposes of that subchapter:

"(1)   to promote the safe operation of commercial motor vehicles;

"(2)   *to minimize dangers to the health of operators of commercial motor vehicles and other employees whose employment directly affects motor carrier safety*; and

"(3)   to ensure increased compliance with traffic laws and with the commercial motor vehicle safety and health regulations and standards prescribed and orders issued under this chapter." (Emphasis added.)

In this case, the court must construe the term "employee," which is used in the context of safety statutes, to determine the application of a statute in the context of federal-state relations.

The positions of the parties reflect in some ways the disparate purposes of the statutes. Taxpayer seeks a broad interpretation, arguing that any employee with an impact on safety who works in two or more states qualifies. In opposition, the department argues that by specifically describing the type of employees, Congress intended to limit the tax benefits to employees whom defendant characterizes as "hands on."

■      Taxpayer is not a driver, mechanic or freight handler. Consequently, he can qualify for the tax benefit or exemption only if he is "not an employer" and he "directly affects commercial motor vehicle safety in the course of his employment." The statute defines an employer as:

"[A] person engaged in a business affecting interstate commerce that owns or leases a commercial motor vehicle in connection with that business, or assigns an employee to operate it; * * *." 49 USC § 31132(3)(A).

Taxpayer is "engaged in a business" within the common meaning of that term. That is, taxpayer employs his time and effort in a business affecting interstate commerce. Moreover, taxpayer is one who "assigns" an employee to operate a commercial motor vehicle. Consequently, for the

limited purpose of this statute, taxpayer may be an "employer" rather than an employee.

■   The words used in the definitions of employee and employer suggests that Congress intended to distinguish between those who do and those who delegate. The described employees: *i.e.*, operators, mechanics, and freight handlers, all identify positions which require hands-on work. Logically, the open-ended category of employees who "directly affect" vehicle safety also suggests positions which require the use of hands in performing their duties. Employees in this category would be performing such tasks as repairing tires, fueling vehicles, servicing vehicles, inspecting vehicles for safety, etc.

■   On the other hand, there are those who delegate, such as managers, supervisors, and consultants. All such positions may have an impact on safety, but they do not directly affect the operation of a commercial motor vehicle in the sense intended by the statute. The statute limits "directly affects" to employees whose daily routine and duty has them moving, touching, or affecting a commercial motor vehicle or its contents. It is these employees who are at risk of injury if the commercial motor vehicle is improperly operated, loaded, repaired or maintained. If brakes fail, a tire explodes, or a driver loses control because the load shifts, it is the hands-on employees who are at risk. Supervisors, managers and other employees are less likely to be injured or have their health impaired by failure to comply with the safety regulations.

From another perspective, it is unlikely that Congress intended to impose a duty on an employee who cannot comply with the law. A supervisor may instruct a driver on safe driving, but only the driver can actually control the operation of the vehicle. If a driver operates a vehicle unsafely, it is the driver who is at risk and it is the driver who directly affects that safety.

■   This perspective is consistent with the language used in section 11504(b)(1), which extends the tax benefit to an employee who performs regularly-assigned duties "with respect to *a* motor vehicle." (Emphasis added.) This wording suggests a direct one-on-one relationship between the

employee and a motor vehicle. That is, an employee does something with respect to a vehicle which directly affects safety relative to that vehicle.

It is noteworthy that this is the one consistent theme between separate chapters in separate subtitles with different purposes. Both section 11504(b)(1) and section 31132 are consistent in requiring an employee to have a direct, hands-on relationship with a motor vehicle. While a supervisor may be responsible for vehicles, and the supervisor's work may have a significant impact upon safety, that impact is not direct, but is implemented through others.

Authority is not the issue. A Group Operations Manager may have authority to order drug tests, remove vehicles and in other ways significantly affect the safe operations of the company. However, this is undoubtedly true of the chief executive officer and many vice presidents and managers. If all managers and supervisors whose decisions affected safety were deemed to be an employee who "directly affects" safety, that phrase would be almost meaningless.

The Group Operations Manager's regularly assigned duties may require performance of duties in two or more states, but it is not with respect to *a* vehicle. The manager's concerns are large in scope, and his duties require him to communicate with all levels of personnel. He is not in the same category as employees who regularly repair brakes, secure freight and drive the vehicles. It is the health and safety of these types of employees that Congress intended to protect in section 31132. Consequently, it is the same limited group to whom Congress extended the benefits of section 11504(b)(1). Accordingly, the court finds that taxpayer is not an employee within the meaning of section 31132.

In view of the above, department's Opinion and Order No. 93-4224 is sustained. Costs to neither party.