DEPARTMENT OF REVENUE,
*Plaintiff,*

*v.*

Douglas E. HUGHES,
*Defendant.*

(TC 4460)

Trial was held January 24, 2001, in the courtroom of the Oregon Tax Court, Salem.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Plaintiff (the department).

Douglas E. Hughes argued the cause for Defendant (taxpayer) *pro se.*

Decision for Defendant rendered March 14, 2001.

**CARL N. BYERS, Judge.**

Plaintiff Department of Revenue (the department) appeals from a magistrate Decision finding that Defendant's (taxpayer) income earned in Oregon is not taxable by Oregon because of the Amtrak Reauthorization and Improvement Act of 1990 (Amtrak Act). Trial *de novo* was held January 24, 2001, in the courtroom of the Oregon Tax Court, Salem.

## FACTS

Taxpayer is a resident of Washington. He is employed by a regional trucking firm headquartered in Auburn, Washington. The company has 28 terminals located in Washington, Oregon, California, Nevada, and Idaho. Taxpayer is a truck mechanic and was originally hired to work at the Auburn terminal in approximately 1985. About 1991, taxpayer was promoted to the position of Maintenance Supervisor and assigned to work at the Portland terminal. The Portland terminal is the second largest terminal in the company.

As a foreman/supervisor, taxpayer ordered parts, maintained schedules, communicated with the company director of maintenance, and supervised six other mechanics. However, taxpayer testified that he is a working supervisor, which means that he wears coveralls and works with tools on the trucks.

Taxpayer's supervisor is Jack Morris, the Director of Maintenance for the company. Morris is also the Auburn terminal foreman/supervisor and performs duties similar to taxpayer's. Taxpayer's employer is a family-owned company and believes in hands-on supervision.

Taxpayer's supervisor has assigned taxpayer responsibility for seven terminals, five of which are in the states of California and Nevada. Taxpayer is responsible for the maintenance and safety of the trucks working out of those terminals. He is required to visit his assigned terminals twice each year to perform safety inspections of the trucks. Except for the Portland terminal, none of his assigned terminals have an on-site mechanic. Trucks that operate out of terminals with no on-site mechanics receive their preventative maintenance from outside vendors every 10,000 miles.

Repairs and other work may be done by visiting company mechanics or outside vendors. One of the purposes of taxpayer's inspections is to keep the company informed of the truck conditions, particularly with regard to safety. Taxpayer also performs in-servicing of new vehicles at his assigned terminals when those terminals take delivery of new trucks.

## ISSUES

The department's appeal raises two issues: (1) in the course of his work, does taxpayer directly affect commercial motor vehicle safety? and (2) did taxpayer perform regularly assigned duties in two or more states?

## ANALYSIS

■ ORS 316.037(3)[1] imposes a tax upon every full-year nonresident who receives income derived from sources in this state. However, that statute is pre-empted by Congress' exercise of its interstate commerce powers. In the Amtrak Act, Congress overrides the jurisdiction of the state to tax income earned in this state in order to relieve employees of motor carriers who regularly perform duties in two or more states. It seems clear that:

> "Congress intended to relieve employees of railroads and interstate trucking firms from income taxes that could be imposed if the employees earn part of their income while passing through a state. For example, a truck driver or train engineer might pass through several states during a single day, technically earning income in each of the states. That could subject those employees to burdensome filing requirements and conflicting claims for tax credits. The apparent purpose of the federal provisions was to relieve those employees of unreasonable burdens by limiting their tax obligations." *Butler v. Dept. of Rev.*, 14 OTR 195, 197 (1997).

■ Not all employees of motor carriers are eligible to qualify for the exemption. The statute defines "employee" as follows:

> "(2) 'employee' means an operator of a commercial motor vehicle (including an independent contractor when

---

[1] All references to the Oregon Revised Statutes are to 1995.

operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who

"(A)    directly affects commercial motor vehicle safety in the course of employment[.]" 49 USC § 31132(2)(A) (1995).

Therefore, to qualify for exemption from taxation on his Oregon-derived income, taxpayer must be a mechanic who "directly" affects commercial motor vehicle safety. This court has construed that statutory language to mean employees who use their hands in performing their duties.

"The statute limits 'directly affects' to employees whose daily routine and duty has them moving, touching, or affecting a commercial motor vehicle or its contents. It is these employees who are at risk of injury if the commercial motor vehicle is improperly operated, loaded, repaired or maintained. If brakes fail, a tire explodes, or a driver loses control because the load shifts, it is the hands-on employees who are at risk. * * *" *Jensen v. Dept. of Rev.*, 13 OTR 296, 301 (1995).

Taxpayer testified that he is a working supervisor who spends approximately 50 percent of his time in coveralls and with tools in his hands working on trucks. Taxpayer emphasized that his company places high priority on safety and that he is personally responsible for assuring that the vehicles are safe to operate. He indicated that staffing levels have lagged behind the company's growth and therefore he is always "one man shy." Consequently, taxpayer is kept very busy.

Taxpayer also personally in-services new vehicles. A particular concern for new vehicles is the slack adjustment on the brakes. Taxpayer testified that any settings done by the manufacturer or dealers are usually inadequate and that the company has its own standards. Consequently, that is one specific item he always inspects and adjusts on new trucks. Other safety duties include inspecting the steering, coupling devices, windshields, and other such items.

Based on the evidence submitted, the court finds that taxpayer is a working foreman whose duties require him to have a hands-on relationship with the vehicles. Taxpayer's regular duties include repairing, servicing, or personally inspecting and testing for safety. Therefore, the court finds

that taxpayer is an employee within the meaning of the statute.

In order to escape taxation by Oregon, taxpayer must also be an employee "who performs regularly assigned duties in two or more States as such as an employee with respect to a motor vehicle." 49 USC § 11504(b)(1) (1995).

Taxpayer testified that he spends approximately 18 days per year on assignment outside Oregon. He is assigned by his supervisor to visit his assigned terminals at least twice each year. Because none of his five out-of-state terminals has on-site mechanics, he takes his tools with him and, in addition to making safety inspections, will make minor repairs and adjustments. Taxpayer testified that due to workload, he does not always make those inspections on a timely basis or always comply with the twice-a-year standard. However, on average, taxpayer spends 10 days per year out-of-state. Taxpayer also goes to the out-of-state terminals to in-service new vehicles upon delivery. He had no estimate of the number of days spent out-of-state servicing new trucks because he performs those duties as the need arises. Taxpayer also goes to company headquarters in Auburn six or more times per year for supervisory training in such topics as personnel management, diversity, and substance abuse.

It appears to the court that taxpayer's estimate of 18 days spent out-of-state is low. However, neither the department nor taxpayer was able to produce any records. Due to the passage of time, both taxpayer and his employer destroyed or discarded any relevant records before the issue arose.

Based on the evidence submitted, the court finds that taxpayer performs safety inspections, minor repairs, and adjustments at his assigned out-of-state terminals as part of his regularly assigned duties. Taxpayer's supervisory training does not qualify as directly affecting safety under the statute and therefore the number of days spent outside the state would be closer to 10 than 18.

The department argues that the employee's assigned duties must be regularly performed in two or more states, which means on a regular basis or at fixed intervals. The

court agrees, but finds that taxpayer is regularly assigned to visit out-of-state terminals twice each year. Taxpayer testified he usually traveled to those terminals in the spring and fall of each year. Although there is no fixed or specific date, the fact that those duties are to be performed twice each year constitutes "regularly assigned."

Underlying the department's appeal is a concern for fairness. The department recognizes that the federal statute does not impose any minimum time requirements, such as performing more than 25 percent of the employee's duties in another state. However, the department thinks it unfair that a taxpayer who spends less than five percent of his working days out of the state should escape taxation by Oregon. The department concludes that it is not fair because it knows that the state of Washington imposes no income tax.

■ Congress did not enact the Amtrak Act to enable employees to escape taxation, but to limit their liability and reporting requirements to their state of residence. Obviously, each state imposes whatever taxes its citizens chose. The state of Washington may not have an income tax, but it has sales taxes and other taxes that taxpayer may have to pay. Whether it is unfair that taxpayer escape taxation by Oregon depends upon whether Washington's tax scheme is considered unfair. That is not a judgment for this court to make.

In summary, the court finds that taxpayer's regularly assigned duties as a working supervisor cause him to directly affect commercial motor vehicle safety. Further, the court finds that taxpayer performs those regularly assigned duties in two or more states. Therefore, the state of Oregon may not impose its income taxes on income earned by taxpayer in Oregon during the years 1995, 1996, and 1997. Judgment will be entered consistent with this Opinion. Defendant to recover his costs.