# IN THE OREGON TAX COURT
## REGULAR DIVISION

Timothy P. TARABOCHIA,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4648)

John A. Wolf, Speer, Hoyt, Jones, Feinman, Poppe, Wolf & Griffith, P.C., argued the cause for Plaintiff (taxpayer).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered for Plaintiff March 17, 2005.

**HENRY C. BREITHAUPT, Judge.**

## I. INTRODUCTION

This matter is before the court for decision following a trial at which Plaintiff (taxpayer) appealed the ruling by the magistrate that taxpayer was not exempt from Oregon state taxation under 49 USC section 14503 (the Amtrak Act) for the 2001 personal income tax year.

## II. FACTS

Taxpayer, a resident of the State of Washington, was employed by MCI Worldcom (MCI) during his 2001 personal income tax year. Taxpayer was responsible for maintaining and protecting the MCI fibre optic transmission lines and network in Washington and Oregon. In order to perform those duties, taxpayer drove, at separate times, two Ford F-250 pickup trucks owned by MCI. One truck, a 1996 model,

had a gross vehicle weight rating (GVWR) of 8,500 pounds and the other truck, a 2001 model, had a GVWR of 8,800 pounds.

Quarterly taxpayer towed one of two generator trailers to St. Helens, Oregon, from Kalama, Washington. Taxpayer was required to tow those trailers as part of regularly assigned training exercises relating to operation of transmitter stations using auxiliary power. Taxpayer also testified that he would tow one of the trailers during emergencies, but that he could not recall whether such an emergency occurred during 2001. One trailer had a GVWR of 2,700 pounds and the other had a GVWR of 4,000 pounds.

On October 24, 2002, taxpayer obtained a certified weight receipt that indicated that the weight of one of the pickup trucks was 10,560 pounds as weighed on that date. Taxpayer testified that the truck was loaded with equipment including a generator, cones, clothes, three metal tool boxes, three large suitcases containing fibre optic splicing materials, fibre restoration kit, restoration tent, splicing tables, chairs, a metal guard to protect above-ground vault openings, and three large water jugs.

Taxpayer testified that he had weighed the truck at the request of Defendant Department of Revenue (the department) and that on that date he loaded the truck to be consistent with trucks used by taxpayers in unrelated tax cases pending before the court. Rickey W. Scalf (Scalf), Operations Outside Plant Manager for Oregon in 2001, testified that it would be unusual for taxpayer to carry large jugs of water on a regular basis. When asked whether the load on the truck, including the water, was typical, taxpayer testified that the load was the probable maximum weight of the truck. Taxpayer did not indicate how the weight of the truck would differ if it had been loaded consistent with how he used the truck on a regularly scheduled basis.

At the Magistrate Division, the magistrate ruled in favor of the department, determining that taxpayer did not qualify for Oregon state income tax exemption under the Amtrak Act. Taxpayer appealed that decision to this division.

## III. ISSUE

Is taxpayer exempt from Oregon state taxation for the 2001 personal income tax year under the Amtrak Act for income earned in Oregon?

## IV. ANALYSIS

■■ In general, the adjusted gross income of a nonresident taxpayer for Oregon state taxation purposes includes all income derived from Oregon sources. ORS 316.127.[1] Under a federal limitation to that general rule, compensation of taxpayers qualifying under 49 USC section 14503 (the Amtrak Act) is subject to state income taxation only in the state of residence of the taxpayer. *See also* OAR 150-316.127-(E). The Amtrak Act provides, in part:

> "No part of the compensation paid by a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 or by a motor private carrier to an employee who performs *regularly assigned duties* in 2 or more States as such an *employee with respect to a motor vehicle* shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence."

49 USC § 14503(a)(1) (emphasis added). At issue in this case is whether taxpayer was an "employee" within the meaning of the Amtrak Act and whether taxpayer performed "regularly assigned duties in 2 or more States." *Id.*

A. *"Employee"*

■ A taxpayer may qualify for the benefits of the Amtrak Act if that taxpayer is an "employee." The Amtrak Act expressly provides that "the term 'employee' has the meaning given such term in section 31132." 49 USC § 14503(a)(2). Section 31132(2) provides:

> " 'employee' means an operator of a commercial motor vehicle (including an independent contractor when operating a

---

[1] All references to Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to the 2001 editions.

commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who—

"(A) directly affects commercial motor vehicle safety in the course of employment; and

"(B) is not an employee of the United States Government, a State, or a political subdivision of a State acting in the course of the employment by the Government, a State, or a political subdivision of a State."

That definition contemplates that an employee may be categorized into one of four categories of individuals: (1) "an operator of a commercial motor vehicle"; (2) "a mechanic"; (3) "a freight handler"; or (4) "an individual not an employer."

■ The parties agree that if taxpayer is to benefit from the Amtrak Act, taxpayer must fall within the first category of individuals. The parties also agree that taxpayer is an "operator" and that he satisfies the requirements of subsections (A) and (B). The parties disagree, however, whether taxpayer operated a "commercial motor vehicle." This case, therefore, is one in which the court must determine the definition of a term within a definition. As one commentator has stated, "The problem of definition is not an easy one—for it never stops. Inevitably, the definition must itself be defined, and the definition of the definition, itself, will need interpretation." Norman J. Singer, *Statutes and Statutory Construction* § 27:2 (6th ed 2002). Here that statement is amplified because "commercial motor vehicle" is a term of art defined differently throughout the statutes and regulations. *See, e.g.,* 49 USC §§ 31101(1); 31132(1); 31301(4). *See also* 49 CFR §§ 350.105; 382.107; 383.5; 390.5.

Although the Amtrak Act expressly provides that "employee" be given the meaning in section 31132, the act does not provide any express guidance as to how to define any other term, such as "commercial motor vehicle," included in the section 31132(2) definition of "employee." The parties have identified two definitions of "commercial motor vehicle" that could be considered: one in 49 USC section 31132(1) and the other in 49 CFR section 390.5.

■ When construing a federal statute, "statutory construction as guided by federal case law is required." *Julian v. Dept. of Rev.*, 17 OTR 384, 388 (2004). The nation's highest federal court has described federal statutory construction as a "holistic endeavor." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 US 50, 60, 125 S Ct 460, 466, 160 L Ed 2d 389 (2004). When embarking on that endeavor, the court must "give effect, if possible, to every clause and word of a statute. * * * [T]hus[, the court is] reluctant to treat statutory terms as surplusage." *Duncan v. Walker*, 533 US 167, 174, 121 S Ct 2120, 150 L Ed 2d 251 (2001) (internal citations, quotations, and correction omitted). As the Tenth Circuit Court of Appeals has stated, a court is required to "interpret Congress's choice of words in the context that it chose to use them." *United States v. Ceballos-Martinez*, 387 F3d 1140, 1144 (2004) (citing *United States v. Bishop*, 412 US 346, 356, 93 S Ct 2008, 36 L Ed 2d 941 (1973) ("We continue to recognize that context is important in the quest for [a] word's meaning * * *.")).

■ In this case, context is an important consideration. Although the Amtrak Act uses the term "employee" three times, the operative definition of that term includes the qualifier "with respect to a motor vehicle." 49 USC § 14503(a)(1). A context is created, therefore, in which some employees with respect to "motor vehicles" will have the benefit of the Amtrak Act. The section 31132 definition of "employee" refers, however, to an operator of a "commercial motor vehicle." In dealing with and reconciling more than one definition of the term "commercial motor vehicle," the court must favor any definition in which motor vehicles, as defined and specified in the Amtrak Act, will qualify so long as the vehicle is "commercial" and other "employee" tests are met.[2]

With those considerations in mind, the court must determine which definition of "commercial motor vehicle" applies in the context of the Amtrak Act. The two definitions offered by the parties are taken in turn.

---

[2] In addition to such considerations as passenger capacity and type of cargo, weight is a standard proxy for whether a motor vehicle is "commercial." *See, e.g.*, 49 USC §§ 31101(1); 31132(1); 31301(4). *See also* 49 CFR §§ 350.105; 382.107; 383.5; 390.5. "[O]ther 'employee' tests" include requirements that the employee directly affect commercial motor vehicle safety and that the employee not be employed by a governmental entity. *See, e.g.*, 49 USC § 31132(1). *See also* 49 CFR § 390.5.

### 1. *49 USC Section 31132(1)*

The first possible definition of "commercial motor vehicle" is that found in section 31132(1), which provides, in pertinent part:

> " 'commercial motor vehicle' means a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle—
>
> "(A) has a gross vehicle weight rating or gross vehicleweight of at least 10,001 pounds, whichever is greater * * *."

Admittedly, the use of the section 31132(1) definition has a positive attribute. The Amtrak Act states that " 'employee' has the meaning given such term in section 31132." 49 USC § 14503(a)(2). One could argue that "the meaning given" to the component parts of the definition of "employee," such as "commercial motor vehicle," should also be the meaning given elsewhere in section 31132.

■ The use of the section 31132(1) definition of "commercial motor vehicle" is problematic, however, because the use of that definition could improperly deny a specific class of motor vehicles, defined in the Amtrak Act, from qualification under the act. For the purposes of the Amtrak Act, "motor vehicle" is defined in 49 USC section 13102(14) as meaning:

> "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation, *or a combination determined by the Secretary*, but does not include a vehicle, locomotive, or car operated only on a rail, or a trolley bus operated by electric power from a fixed overhead wire, and providing local passenger transportation similar to street-railway service."

(Emphasis added.) This definition differs from that found in section 31132(1), in which the definition of "commercial motor vehicle" does not state that a "combination" of vehicles may qualify. Under section 31132(1), a commercial motor vehicle is either a self-propelled vehicle or a towed vehicle; it is not a combination of either or both of those types of vehicles. The use of the definition of "commercial motor vehicle" in section 31132(1), therefore, would mean that a combination motor vehicle, which is a "motor vehicle" under the Amtrak Act, would be excluded, even if that combination

motor vehicle met whatever commercialism requirements exist.

In summary, although the use of the section 31132(1) definition may have a positive attribute, that definition has at least one significant flaw when used in the context of the Amtrak Act. With that in mind, the court considers the use of a regulatory definition of "commercial motor vehicle" promulgated for use in the statutory part that includes the Amtrak Act.[3]

## 2. *49 CFR Section 390.5*

The use of the second possible definition of "commercial motor vehicle"—a regulatory definition—recognizes and is based on the premise that, in the context of the Amtrak Act, "commercial motor vehicle" should be defined consistently, if at all possible, with the Amtrak Act's definition of the term "motor vehicle." As discussed above, "motor vehicle" is statutorily defined for purposes of the Amtrak Act in 49 USC section 13102(14) to include "a combination [of vehicles] determined by the Secretary [of Transportation.]"[4] The Secretary has delegated the authority to determine which combinations of vehicles may qualify as "motor vehicles" to the Administrator of the Federal Motor Carrier Safety Administration (FMCSA). 49 CFR § 1.73(a)(1). Pursuant to that delegation of authority, the FMCSA has acted in several ways relevant to this matter.

---

[3] For purposes of a complete discussion only, the court notes that it would find that neither of the Ford pickup trucks that taxpayer used during the 2001 personal income tax year would qualify as a "commercial motor vehicle" under section 31132(1). Taxpayer asserts that his use of one of two Ford F-250 pickup trucks qualifies because the GVW of both of those vehicles as loaded for his typical work-related duties was in excess of 10,001 pounds. As discussed in detail above, taxpayer introduced into evidence a certified weight receipt that indicates that the weight of one of the pickup trucks was 10,560 pounds as weighed on October 24, 2002. Taxpayer also testified, however, that he had weighed the truck at the request of the department and that he had loaded the truck to be consistent with trucks used by taxpayers in unrelated tax cases pending before the court. Moreover, taxpayer testified that the load was the probable maximum weight of the truck. Based on the record, therefore, the court concludes that taxpayer has not met his burden of proof necessary to establish that either of the trucks that he operated during the 2001 personal income tax year qualifies under the Amtrak Act on the basis that their GVW was in excess of 10,001 pounds.

[4] The Secretary also has general powers to prescribe regulations for the part in which the Amtrak Act is located. 49 USC § 13301(a).

First, the FMCSA has promulgated a regulatory definition of "motor vehicle" that is consistent with the section 13102(14) definition. 49 CFR § 390.5 ("*Motor vehicle* means any vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, *or any combination thereof* determined by the [FMCSA] * * *." (emphasis added)). That definition recognizes that motor vehicles may be combinations and that the FMCSA has authority to determine which combinations of vehicles may qualify as "motor vehicles." *Id.*

■ Second, the FMCSA has promulgated a regulatory definition of "commercial motor vehicle." That regulation defines "commercial motor vehicle" as meaning:

"any self-propelled or towed *motor vehicle* used on a highway in interstate commerce to transport passengers or property when the vehicle—

"(1) Has a gross vehicle weight rating [GVWR] or gross *combination* weight rating [GCWR], or gross vehicle weight [GVW] or gross *combination* weight [GCW], of 4,536 kg (10,001 pounds) or more, whichever is greater * * *."

49 CFR § 390.5 (emphasis added) (the regulatory definition). Unlike the section 31132(1) definition of "commercial motor vehicle," which does not allow for combinations of vehicles contemplated with the Amtrak Act's controlling statutory definition of "motor vehicle," the regulatory definition recognizes that a "commercial motor vehicle" may be a combination motor vehicle. The regulatory definition expressly provides that a commercial motor vehicle may be measured by either its GCWR or its GCW, which necessarily requires a combination of at least two motor vehicles. *See, e.g.*, 49 CFR § 390.5 (defining GCWR). The regulatory definition also expressly states that a commercial motor vehicle must be a "motor vehicle." That statement supports the position that if the Secretary or the FMCSA, through delegated authority, has determined that a certain combination of vehicles satisfies the definition of a "motor vehicle," then that combination may also be a "commercial motor vehicle" within the meaning of the regulatory definition.

 Finally, the FMCSA has offered guidance as to what types of combinations may satisfy its definition of a "commercial motor vehicle" in the form of an interpretation, which states:

> "Question 11: A company has a truck with a GVWR under 10,001 pounds towing a trailer with a GVWR under 10,001 pounds. However, the GVWR of the truck added to the GVWR of the trailer is greater than 10,001 pounds. Would the company operating this vehicle in interstate commerce have to comply with the FMCSRs?

> "Guidance: § 390.5 of the FMCSRs includes in the definition of CMV a vehicle with a GVWR or GCWR of 10,001 or more pounds. The section further defines GCWR as the value specified by the manufacturer as the loaded weight of a combination (articulated) vehicle. Therefore, if the GVWR of the truck added to the GVWR of the trailer exceeds 10,001 pounds, the driver and vehicle are subject to the FMCSRs."

Fed. Motor Carrier Safety Admin., *Interpretations*, at http://www.fmcsa.dot.gov/rulesregs/fmcsr/regs/interp390.htm (last modified Nov 16, 2004). That interpretation indicates that the FMCSA has determined that a combination of a truck and trailer may qualify as a commercial motor vehicle if that combination meets the weight requirements of the regulatory definition. Moreover, the authority under which the FMCSA promulgated that interpretation is directly traceable to its authority to define what combinations may constitute "motor vehicles" within the meaning of the Amtrak Act. The regulatory definition provides, therefore, that a combination of a truck and a trailer that meets certain weight requirements will qualify as a "commercial motor vehicle" within the context of the Amtrak Act.[5]

---

[5] Although it concedes that the regulatory definition is a permissible interpretation of "commercial motor vehicle," the department nonetheless contends that taxpayer's unique combination of truck and type of trailer does not qualify under the regulatory definition and the FMCSA interpretation. Relying on the federal Department of Transportation's Model Minimum Uniform Crash Criteria (Criteria), the department argues that GCWR is calculated by adding together the GVWRs of only specific types of trucks and trailers. Dep't of Transp., Model Minimum Unif. Crash Criteria, *V27. Gross Vehicle Weight Rating*, at http://www.mmucc.us/V27.aspx (last visited Mar 1, 2005). In particular, the department argues that only trucks pulling trailers or truck tractors pulling

### 3. *Choice of Definition*

■ The court concludes that the regulatory definition is the preferred definition of "commercial motor vehicle" for use in applying the definition of "employee" found in section 31132 to the Amtrak Act. Unlike the section 31132(1) definition, the regulatory definition is consistent with the Amtrak Act's definition of the term "motor vehicle, " which permits combination motor vehicles to qualify. Indeed, the regulatory definition is designed for use in construing the Amtrak Act. *See* 49 CFR § 390.5 (prefatory language).

### 4. *Application of Regulatory Definition*

■ Having concluded that the regulatory definition is the preferred definition to use in the construction of the Amtrak Act, the court turns to whether taxpayer may qualify as an "operator of a commercial motor vehicle" under the regulatory definition. Taxpayer asserts that he may seek the benefit of the Amtrak Act because the combination of either of the pickup trucks he used and either of two trailers he used (the truck and trailer combination) qualifies as a commercial motor vehicle under either the regulatory definition or the FMCSA interpretation. Although the FMCSA interpretation treats the GCWR calculation differently than the regulatory definition of GCWR, that difference is immaterial in this case. Under the interpretation, the GVWRs of the truck and trailer are added to determine if the GCWR of the truck and trailer combination exceed 10,001 pounds. Here the record indicates that taxpayer operated two Ford F-250 pickup trucks during the relevant period. One of those trucks had a

semitrailers qualify under the Criteria. *Id*. The department then argues that taxpayer operated a truck pulling a semitrailer and, therefore, taxpayer's specific vehicle combination does not meet the requirements of the regulatory definition.

Upon closer inspection of the regulations that control in the context of the Amtrak Act, the department's argument is easily dismissed. The controlling regulatory definition of "trailer" drives that point home. In that definition, trailer "includes" full trailer, pole trailer, and semitrailer, wherein "[i]ncludes is used as word of inclusion, not limitation." 49 CFR §§ 390.5; 390.7. Even if a taxpayer could only qualify in cases in which the taxpayer operated a truck towing a trailer, as is stated in the Criteria, the controlling regulatory definition of trailer is broad enough to include many types of trailers, semitrailers being only one of three listed types. On this record, the court finds that either of the trailers that taxpayer used qualify under the controlling regulatory definition of a "trailer."

GVWR of 8,800 pounds and that the other truck had a GVWR of 8,500 pounds. The record also indicates that the GVWR of the two trailers was 2,700 and 4,000 pounds, respectively. The court finds that any combination of the GVWRs of those trucks and trailers exceeds a GCWR of 10,001 pounds under the calculation method indicated in the FMCSA interpretation.

■ Alternatively, under the regulatory definition of GCWR, the court must add the "GVWR of the power unit and the total weight of the towed unit and any load thereon." 49 CFR § 390.5. Although the record does not contain the "total weight" of either of the two trailers that taxpayer towed, the department conceded that if the combination of the truck and either trailer met the definition of a commercial motor vehicle in the context of the Amtrak Act, either combination would satisfy the applicable weight requirement under the regulations. 49 CFR § 390.5. On the basis of that concession, therefore, the court finds that taxpayer's use of the truck and trailer combination satisfies the regulatory GCWR requirement.

### 3. *Summary*

Based on the foregoing reasons, the court concludes that the regulatory definition is the preferred definition of "commercial motor vehicle" in the context of the Amtrak Act because it cures the defects attendant to the use of the section 31132(1) definition of that term of art. Moreover, the court concludes that taxpayer is an "employee" within the meaning of the Amtrak Act because taxpayer's use of the truck and trailer combination qualifies as a "commercial motor vehicle" under the regulatory definition.

### B. *Regularly Assigned Duties in Two or More States*

■ Having determined that taxpayer's use of the truck and trailer combination qualifies taxpayer as an "employee" within the meaning of the Amtrak Act, the issue becomes whether taxpayer used such a combination on a "regularly assigned" basis. 49 USC § 14503(a)(1). Under the Amtrak Act, a taxpayer may qualify for state tax exemption if that taxpayer "performs regularly assigned duties in 2 or more States." *Id.* This court has previously stated that "[t]he

phrase 'regularly assigned' suggests that Congress intended to exclude 'irregular,' 'unusual,' or 'special' assignments." *Butler v. Dept. of Rev.*, 14 OTR 195, 200 (1997). This court has also indicated that although that phrase "means on a regular basis or at fixed intervals," that does not mean that the duties must be performed on a fixed or specific date. *Dept. of Rev. v. Hughes*, 15 OTR 316, 320-21 (2001). The court's determination, therefore, is a factual one that turns on whether the taxpayer's duties regularly occur as opposed to whether those duties are unusual or are special.

The department contends that taxpayer's use of the truck and trailer combination does not satisfy the statutory requirements under the Amtrak Act for two interrelated reasons. First, the department argues that the court should consider whether taxpayer *primarily* used the truck and trailer combination when determining whether the use of that combination qualifies for state tax exemption under the Amtrak Act. Although "primary use" is not contemplated in the cases cited by the department, it appears that the department is arguing that the taxpayer's use of the truck and trailer combination was merely "unusual" or "special." *Butler*, 14 OTR at 200.

In *Butler*, the taxpayer was a shop mechanic for an interstate trucking company and was based in Portland, Oregon. *Id.* at 196. About three times each year, the taxpayer made trips to Vancouver, Washington, in order to obtain parts that he needed immediately. *Id.* In finding that those trips were made only on an "as-needed basis" or in "emergency situations," the court concluded that the taxpayer did not perform those duties on a regularly assigned basis. *Id.* at 196, 200.

Here the department asserts that taxpayer only used the truck and trailer combination in emergency situations. The record, however, does not support that assertion in this case. Although taxpayer testified that he used the trailers in emergencies because he might need an emergency generator, he indicated that he did not recall responding to such an emergency in 2001.

Taxpayer does not rely, however, on his use of the trailer in emergencies as a basis for qualifying as a regular

use. Taxpayer testified that he was required to tow a trailer at least once quarterly from Kalama, Washington, to St. Helens, Oregon, as part of his regularly assigned duties. Taxpayer also testified that he might tow a trailer as often as once a month to St. Helens, although he did not specifically state that those trips were also part of his regularly assigned duties. Scalf testified that he would require technicians, such as taxpayer, to tow trailers to drills and that those drills would occur no more than once quarterly. Based on this record, therefore, the court finds that taxpayer was required to, and in fact did, use a truck and trailer combination at least once per quarter as part of regularly assigned duties in Oregon.

The department's second argument follows from that finding: although taxpayer used the truck and trailer combination once per quarter, that is quantitatively an insignificant number of times and, therefore, was merely "unusual" or "special." *Id.* at 200. The department argues that this court's holding in *Hughes* indicates that the court will consider the absolute number of trips a taxpayer takes out of state as measure of "regularity." The court disagrees.

In *Hughes*, the taxpayer was a Washington resident employed as a truck mechanic at the Portland terminal of a regional trucking firm. 15 OTR at 317. Taxpayer was required to visit seven other terminals twice each year to perform safety inspections. *Id.* Five of those terminals were located in California and Nevada. *Id.* In ruling for the taxpayer, the court found that the "taxpayer is regularly assigned to visit out-of-state terminals twice each year. * * * Although there is no fixed or specific date, the fact that those duties are to be performed twice each year constitutes 'regularly assigned.' " *Id.* at 321.

Nothing in the *Hughes* opinion suggests that the court was concerned with total number of trips that the taxpayer made out-of-state; rather, the court considered whether those trips were "regularly assigned." Here taxpayer was required to operate the truck and trailer combination as part of training exercises at least once per quarter. Even if absolute numbers of trips could be used as a proxy for regularity, taxpayer arguably made trips twice as frequently as

the taxpayer in *Hughes*. The court finds, therefore, that taxpayer used the truck and trailer combination on a regularly assigned basis.

In summary, the court concludes that taxpayer performed regularly assigned duties with respect to the truck and trailer combination within the meaning of the Amtrak Act.

## V. CONCLUSION

Based on the foregoing reasons, the court concludes that, under the Amtrak Act, taxpayer is not subject to Oregon state income taxation for 2001 in respect to the item of income at issue in this case. Now, therefore,

IT IS THE DECISION OF THE COURT that taxpayer qualifies under 49 USC section 14503 for Oregon state income taxation exemption for the 2001 personal income tax year.