DECISION
Plaintiff appeals the Notices of Deficiency Assessment issued by Defendant for the 2006, 2007, and 2008 tax years. A telephone trial was held in this matter on March 23, 2011. Plaintiff appeared and testified on his own behalf. Sharon J. Watson, Tax Auditor, appeared and testified on behalf of Defendant. As an exhibit, Plaintiff submitted a copy of OAR 150-316.127-(E). Defendant submitted Exhibit A, a photograph of Plaintiff's personal pickup truck. Both exhibits were received without objection.
 I. STATEMENT OF FACTS
Plaintiff testified that he lives in Vancouver, Washington, and had lived there during the tax years at issue. During the tax years at issue, he worked for Allwest Underground Inc. (Allwest) at its Portland, Oregon branch location. Allwest has three branch locations: two in Washington and one in Oregon. (Ptf's Amended Compl at 5.[1]) The parties agree that Allwest Underground, Inc. qualifies as an interstate motor carrier under the Amtrak Act.
Plaintiff testified that he drove two vehicles for Allwest: a personal pickup truck that he was required to purchase for his position that was "logoed" and had the yellow safety light set *Page 2 
atop the truck; and an Isuzu flatbed owned by Allwest that meets Oregon's criteria for a commercial vehicle but does not require a commercial driver license. Plaintiff testified that he used the Isuzu flatbed truck to deliver larger, heavier items. He testified that he occasionally filled in for one of the Isuzu truck drivers as need be. Plaintiff testified that he was assigned duties in both Oregon and Washington, including making deliveries and "haul[ing] equipment and products" to both Oregon and Washington. Defendant concedes that the Isuzu flatbed truck would qualify under the Amtrak Act, but maintains that delivery using a commercial motor vehicle was not one of Plaintiff's regularly assigned duties.
Both parties testified concerning the letter from Burwell, dated October 21, 2009, stating that Plaintiff "traveled in the greater Portland and Southwest Washington area calling on customers to sell or rent them equipment, delivered sold or rented equipment, and performed other duties as required by the Portland Branch Manager."
Plaintiff testified that Burwell is the manager for the Woodinville, Washington, branch of Allwest and that he visited the Portland branch "maybe a dozen times" in three years. Plaintiff testified that his "branch manager Ed" is the one who would give him assignments to deliver products to customers in Washington and Oregon. He testified that "Stan didn't know everything the Portland branch did."
Watson testified that, based on the Burwell letter, it was clear to her that Allwest qualified under the Amtrak Act, but not that Plaintiff qualified. She testified that she contacted Burwell and spoke with him on November 19, 2009; during that conversation, Burwell confirmed that Plaintiff's job title was "outside sales" and that his duties were "to call on customers and get orders for equipment" and that "if he did any regular deliveries in the course of his visits to customers it was small items that would fit in the back of his pickup truck." *Page 3 
Watson testified that Burwell stated "any equipment that was large enough to require delivery on the commercial vehicle was delivered by their * * * commercial driver licensed drivers."
Watson testified that Burwell told her Plaintiff's work location had "three larger trucks, two that were over the gross vehicle weight rating for Washington that required a CDL [commercial driver license] driver and one that was just under the gross vehicle weight rating." Watson testified that Washington and Oregon have different gross vehicle weight rating requirements for CDLs. Washington drivers do not have to have a CDL until the vehicle is over 26,000 pounds. The smaller Isuzu flatbed truck was just under the 26,000 pound limit and could be driven by someone without a CDL. According to Watson, Burwell indicated that Plaintiff "may have on occasion" driven that truck only if the regular CDL driver was not available, but it was not part of his regular duties; Plaintiff's regular duties were as a salesperson for Allwest, using Plaintiff's own vehicle, for which he received a monthly allowance from Allwest.
Plaintiff testified that he "ha[s] always delivered equipment, products, either rented or sold, to [his] customers in both states on a regular basis, just not in the Isuzu, in the commercial vehicle that [he] is allowed to drive." Plaintiff testified that "for gas and insurance purposes" it was more feasible for him to use his truck to deliver products and he was compensated for the use of his truck. He testified that he delivered items in the Isuzu flatbed truck 8 to 12 times per year. Watson stated that she "agree[s] that [Plaintiff] deliver[ed] parts and supplies back to his customers but he utilize[d] the pickup truck not the commercial motor vehicle." Watson testified that the vehicle that Plaintiff used on a regular basis, his personal pickup truck, "does not qualify as a commercial motor vehicle." *Page 4 
 II. ANALYSIS
Nonresidents earning taxable income in Oregon are subject to taxation under ORS 316.037(3).[2] The federal Amtrak Reauthorization and Improvement Act of 1990 (Amtrak Act) exempts certain nonresidents from Oregon income taxation. The Amtrak Act provides, in part:
 "No part of the compensation paid by a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 or by a motor private carrier to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence."
49 USC § 14503(a)(1) (emphasis added).
The parties agree that Plaintiff was a resident of Washington, not Oregon. Defendant does not dispute that Plaintiff's employer is a "motor private carrier" within the meaning of the Amtrak Act and that he performed regularly assigned duties in both Washington and Oregon. The only issues before the court are: (1) whether Plaintiff was an "employee" within the meaning of the Act; and (2) whether Plaintiff's "regularly assigned duties" in two or more states qualify for purposes of the Amtrak Act.
Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of *Page 5 
evidence, the more convincing evidence." Feves v. Dept. ofRevenue, 4 OTR 302, 312 (1971) (citations omitted).
A. Employee who directly affects commercial motor vehiclesafety
The Amtrak Act states that "the term `employee' has the meaning given such term in section 31132."49 USC § 14503(a)(2). Section 31132(2) states:
 "`employee' means an operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who —
 "(A) directly affects commercial motor vehicle safety in the course of employment; and
 "(B) is not an employee of the United States Government, a State, or a political subdivision of a State acting in the course of the employment by the Government, a State, or a political subdivision of a State."
"That definition contemplates that an employee may be categorized into one of four categories of individuals: (1) `an operator of a commercial motor vehicle'; (2) `a mechanic'; (3) `a freight handler'; or (4) `an individual not an employer.'"Tarabochia v. Dept. of Rev. (Tarabochia),18 OTR 210, 215 (2005). Plaintiff does not contend that he falls into the second, third, or fourth categories, so the court will focus only on the first, "an operator of a commercial motor vehicle."
"Although the Amtrak Act expressly provides that `employee' be given the meaning in section 31132, the act does not provide any express guidance as to how to define any other term, such as `commercial motor vehicle,' included in the section 31132(2) definition of `employee.'" Tarabochia,18 OTR at 215. The court in Tarabochia determined that "the preferred definition of `commercial motor vehicle' for use in applying the definition of *Page 6 
`employee' found in section 31132 to the Amtrak Act" is that found in 49 CFR section 390.5. Id. at 221.49 CFR section 390.5 defines "commercial motor vehicle" as:
 "[A]ny self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle —
 "(1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or
 "(2) Is designed or used to transport more than 8 passengers (including the driver) for compensation; or
 "(3) Is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or
 "(4) Is used in transporting material found by the Secretary of Transportation to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed by the Secretary under 49 CFR, subtitle B, chapter I, subchapter C."
Defendant concedes that the Isuzu flatbed truck qualifies as a commercial motor vehicle under the Amtrak Act. Neither party provided testimony or evidence concerning whether Plaintiff's pickup truck qualifies as a "commercial motor vehicle" within the meaning of the Act. Plaintiff testified that he used the pickup truck to make small deliveries to customers of Allwest, but did not provide any evidence or testimony concerning the gross vehicle weight rating or the gross combination weight rating. The court cannot determine whether Plaintiff's pickup truck qualifies under49 CFR section 390.5.
B. Regularly assigned duties in two or more states
To qualify under the Amtrak Act, an employee must have "regularly assigned duties" in two or more states. 49 USC § 14503(a)(1). As explained above, the court is unable to conclude that Plaintiff's pickup truck qualifies as a "commercial motor vehicle" within the meaning of the Amtrak Act. Thus, the only duties of Plaintiff that the court may consider are those involving *Page 7 
the Isuzu flatbed truck, which the parties agree qualifies as a "commercial motor vehicle" within the meaning of the Amtrak Act.
"[R]egularly assigned duties" occur "on a regular basis" or "at fixed intervals." Dept. of Rev. v. Hughes
(Hughes), 15 OTR 316, 320-21 (2001). Regularly assigned duties are those "that are performed on a regular basis in more than one state, e.g., daily, weekly, or monthly assignment"; they are "normal, typical, or natural duties that may not occur on fixed or specific dates." White v. Dept. of Rev. (White), TC-MD No 050911A, WL 1868338 at *1 (May 19, 2006) (citations omitted); see alsoKuhlman v. Dept. of Rev., TC-MD No 040275D, WL 3465709 at *4 (Dec 1, 2005) (holding that a taxpayer who used a commercial motor vehicle to deliver packages across state lines when other drivers were unavailable and was the only driver licensed to transport packages containing hazardous materials qualified under the Amtrak Act because, "[e]ven though `there [was] no fixed or specific date,' the frequency with which [the taxpayer] perform[ed] his duties [made] them `regularly assigned'").
A relatively small number of interstate trips may qualify a taxpayer under the Amtrak Act if those trips are assigned at regular or fixed intervals. See Tarabochia, 18 OTR at 224-25 (regularly scheduled, quarterly interstate trips qualified under the Amtrak Act); Hughes, 15 OTR at 320-21 (two regularly scheduled interstate trips per year qualified under the Amtrak Act).
"This court has previously stated that [t]he phrase regularly assigned suggests that Congress intended to exclude irregular, unusual, or special assignments." Tarabochia,18 OTR at 222-23, citing Butler v. Dept. of Rev.
(Butler), 14 OTR 195, 200 (1997) (internal quotation marks omitted). Trips made on an "as-needed basis" or in an "emergency situation" are not "regularly assigned." See Butler,14 OTR at 200 (holding that three "as-needed" interstate trips *Page 8 
to pick up parts did not qualify under the Amtrak Act); see alsoWhite, WL 1868338 at *2 (holding that the taxpayer's "as-needed" interstate trips did not qualify under the Amtrak Act).
"`[C]ompany policy is not an assigned duty. Under [company] policy, an employee might be required to do something that others would normally do.'" True v. Dept. of Rev. (True), TC-MD No 030024F, WL 22846282 at *3 (Oct 29, 2003), citingButler, 14 OTR at 199-200. In True, the taxpayer was required to maintain a CDL and to be "qualified, ready, and able to perform the entire spectrum of duties at all times"; the taxpayer drove qualifying commercial motor vehicles "occasionally," particularly when there was a "backlog of freight."Id. at *1. The court held that those duties of the taxpayer were not regularly assigned and the taxpayer did not qualify under the Amtrak Act. Id. at *3.
The only duties to be considered for purposes of the Amtrak Act are those that directly affect commercial motor vehicle safety.Buckel v. Dept. of Rev. (Buckel), TC-MD No 010911C, WL 745637 at *4 (Apr 15, 2002). In Buckel, the taxpayer was a salesperson who sold "trucks of all sizes" in a sales area including both Oregon and Washington. Id. at *1. The court declined to rule on whether the taxpayer's regularly assigned duties occurred in two or more states, noting that the only relevant duties of taxpayer for purposes of the Amtrak Act are those that directly affect commercial motor vehicle safety. Id. at *4, citingJensen v. Dept. of Rev., 13 OTR 296, 301. The court found that the only times that the taxpayer operated a qualifying commercial motor vehicle (i.e. one with a gross vehicle weight of at least 10,001 pounds) were when the taxpayer took customers on test drives or delivered a purchased vehicle to a customer, neither of which qualified as "transport[ing] passengers or property" under the Amtrak Act. Id.
Plaintiff in this case testified that he frequently delivered smaller equipment and products to customers using his pickup truck and, occasionally, using the Isuzu flatbed truck. He testified *Page 9 
persuasively that delivering equipment and products to customers in two states is one of his regularly assigned duties. Plaintiff testified that he made the majority of his deliveries using his personal pickup truck; he only delivered larger equipment and products using the Isuzu flatbed truck on an "as-needed" basis when regular drivers were not available. As stated above, the only duties of Plaintiff that the court may consider are those involving the Isuzu flatbed truck. This court has consistently held that interstate trips made on an "as-needed" basis or only in special circumstances are not part of an employee's "regularly assigned duties" under the Amtrak Act. Neither Plaintiff's occasional use of the Isuzu flatbed truck nor his regular use of the pickup truck qualify him from exemption from taxation by Oregon under the Amtrak Act.
 III. CONCLUSION
Plaintiff did not prove by a preponderance of the evidence that his regularly assigned duties for Allwest during the 2006, 2007, or 2008 tax years qualify him for exemption from taxation by Oregon under the Amtrak Act. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of ___ 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on June 30, 2011. The Court filed and entered this documenton June 30, 2011.
[1] That is a letter dated October 21, 2009 from Stan Burwell (Burwell), Allwest Sales Manager.
[2] All references to the Oregon Revised Statutes (ORS) are to 2007. Both the 2005 and 2007 ORS are applicable in this case. The 2005 and 2007 versions of all ORS provisions cited in this Decision are identical.
 *Page 1